UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
WENDY KAREN SUMMERS,

                             Plaintiff,

          -against-

THE ABBOTT LABORATORIES, et al.,

                            Defendants.

---------------------------------------------------------------- x

**REVISED MEMORANDUM AND ORDER**

10-CV-4247 (ENV) (JMA)

**VITALIANO, D.J.**

On September 5, 2012, Magistrate Judge Joan M. Azrack issued a Report and Recommendation ("R&R") in which she recommends that defendants' motion for summary judgment be granted, dismissing all claims brought in this action by plaintiff Wendy Karen Summers. On September 19, 2012, plaintiff made timely objections to the R&R. After careful and *de novo* review of the record, this Court adopts Judge Azrack's R&R in its entirety, with the supplementation of this Memorandum and Order, as the opinion of the Court. The reasons follow.

## BACKGROUND

On September 17, 2010, Summers brought this products liability action against defendants Abbott Laboratories; Burroughs Welcome Co.; Carnrick Laboratories, Inc.; Dart Industries, Inc.; Eli Lilly and Company ("Lilly"); Kremers-Urban Co.; Lannett Company, Inc.; Ortho McNeil Pharmaceutical, Inc.; Mallinckrodt Inc.; GlaxoSmithKline LLC; Merck Sharp & Dohme Corp.; Merrell Dow Pharmaceuticals, Inc.; Premo Pharmaceutical Laboratories, Inc.; Rhone-Poulec Rorer Pharmaceuticals; Solvay Pharmaceuticals; E.R. Squibb & Sons, LLC; Schering Corporation; and Pharmacia & Upjohn Company LLC, asserting that defendants are

liable for injuries Summers sustained from her *in utero* exposure to the prescription medication diethylstilbestrol ("DES").[1] The drug was formerly manufactured and marketed by each of the defendants. (Compl. at ¶ 32.) On February 10, 2012, Lilly filed a motion for summary judgment, (Docket No. 59), that was subsequently joined by defendants Abbott Laboratories; E.R. Squibb & Sons, L.L.C.; Dart Industries, Inc.; GlaxoSmithKline LLC; Mallinckrodt Inc.; Ortho McNeil Pharmaceutical, Inc.; Premo Pharmaceutical Laboratories, Inc; and Pharmacia & Upjohn Company LLC, (Docket Nos. 56, 61, 62, 63, 64, 65, 66), claiming that plaintiff could not identify the manufacturer of the DES taken by her mother, as required under the law of Quebec, which governs the case.[2]

Upon reference pursuant to Rule 72(b), Judge Azrack recommended that (1) defendants' motion for summary judgment be granted in its entirety and (2) plaintiff's claims against all defendants be dismissed, regardless of whether they officially joined Lilly's motion. To plaintiff's timely objections ("Objections"), Lilly filed a timely response on October 3, 2012.

## STANDARD OF REVIEW

In reviewing a report and recommendation of a magistrate judge, a district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Moreover, in conducting its review, the district "court need only satisfy itself that there is no clear error on the face of the record" to accept a magistrate judge's report and recommendation, provided no timely objection has been made. *Urena v. New York*, 160 F. Supp. 2d 606, 609-10 (S.D.N.Y. 2001) (quoting *Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985)). But, a district judge is required to "determine *de novo* any part of the

---

[1] Plaintiff previously stipulated to dismiss with prejudice her action against Schering Corp., (Docket No. 28), and discontinued her action against Kremers-Urban Co., (Docket No. 46).
[2] Other active defendants did not join the motion.

2

magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010).

## DISCUSSION

Summers objects to the R&R, arguing that Judge Azrack wrongly prohibited plaintiff from proving causation under a market share theory. She asserts that (1) Canadian law supports recovery under a market share theory, eliminating the conflict of law issue identified in the R&R; (2) circumstances warrant applying New York law anyway; and (3) in the absence of market share liability, plaintiff's claims should survive summary judgment because questions of fact remain as to the identity of the maker of the DES taken by plaintiff's mother.

1. <u>A Conflict of Law Exists Because Quebec Courts Do Not Apply Market Share Theory</u>

Since it is incontestable that significant events allegedly giving rise to liability have occurred in multiple jurisdictions, a conflict of law analysis ordinarily is required. With New York as the forum, applying New York's conflict of law rules, the R&R articulates in detail the high stakes nature of the asserted conflict between the law of New York—where plaintiff filed suit and which has adopted the doctrine of market share liability and Quebec—where plaintiff was exposed to DES and which, defendants claim, does not recognize market share theory. (R&R at 5-10.)

Off the start, plaintiff attacks Judge Azrack's finding that the law of the jurisdiction where the injury occurred actually conflicts with the law of the forum state (which would make the ordinary analysis academic). (Objections at 2-3.) Specifically, Summers contests the R&R's conclusion that a Quebec court would not permit recovery under a market share theory. Two arguments are advanced; both fail.

3

As Judge Azrack explained perceptively in the R&R, while *Gariepy v. Shell Oil Co.*, (2000) 51 O.R.3d 181 (Ont. Sup. C.J.), upon which plaintiff primarily relies, demonstrates that market share liability has been applied in a Canadian court sitting in the province of Ontario on one occasion, it does not establish a principle of Quebec law. Even assuming *arguendo* that a Quebec court applying the province's civil code jurisprudence would follow such common law precedent, the Quebec court would not be bound by *Gariepy*, which was decided by the intermediate court of an entirely different province. *See* Gerald L. Gall, The Canadian Legal System 343 (4th ed. 1995). The Declaration of Michael J. Peerless, Esq., (Objections, Ex. A), does little to elevate the significance of *Gariepy*.[3] Peerless, who identifies himself as a member of the Bar of the Law Society of Upper Canada (*i.e.*, the association governing lawyers in Ontario), claims no special knowledge of the law of Quebec. *Id.* Nor does he opine on how *Gariepy* impacts Quebec law. *See id.* He states simply, without identifying support, that the case "states a rule of law that would be followed in DES cases in *Canada*." *Id.* (emphasis added).

The authorities plaintiff cites for the proposition that Canadian commentators view favorably the market share doctrine jurisdictions like New York follow do not advance her argument. The first authority, a law journal article, describes two cases in which United States courts applied market share liability. Lynda M. Collons & Heather McLeod-Kilmurray, *Material contribution to Justice? Toxic Causation after* Resurfice Corp. v. Hanke, 48 Osgoode Hall L.J. 411, 429-31 (2010). However, nowhere do the authors suggest that Canadian law already tracks the American doctrine. Rather, it reviews the cases in a section of the work that "surveys the various risk-based reforms that have been undertaken in other jurisdictions to

---

[3] Because Peerless's declaration has no effective impact on the outcome of this motion, the Court need not determine whether it is properly before the Court.

4

address the unique problems posed by toxic torts." *Id.* at 414. It does not purport to offer a view of the actual status of Canadian law generally, or more importantly, in Quebec.

The second article, John C. Kleefeld & Anila Srivastava, *Resolving Mass Wrongs: A Command-Consensus Perspective*, 30 Queen's L.J. 449 (2005), is similarly unhelpful. While it indeed includes the quote highlighted in plaintiff's Objections—"Canadian courts have since recognized the viability of the market share doctrine, at least on a threshold test of whether it can sustain a cause of action"—a close look at the relevant footnote shows that proposition refers solely to *Gariepy. Id.* at 461, 461 n. 48. When the smoke clears, Summers proffers no statute or case law establishing that Quebec has deviated from its prior rules of decision and has adopted the market share doctrine of liability. Considering all of Canada's jurisprudence, plaintiff merely offers, to no avail, a single outlying provincial precedent not controlling in Quebec.

2. Circumstances Do Not Warrant Imposing New York Law

Consequently, having identified a substantive conflict between the law of the relevant jurisdictions, plaintiff's contrary objection is overruled and a conflict of law analysis is not only not academic, it is very much warranted. Circumstances to be evaluated in that analysis do not favor imposing New York law.

New York conflict rules require the Court to conduct an interest analysis to determine which jurisdiction's rules should be applied. *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998). Following the well-established doctrine of our forum, Judge Azrack relied upon the third *Neumeier* rule, which "directs a court to apply the law of the jurisdiction where the injury occurred." (R&R at 11 (quoting *Gilbert v. Seton Hall*, 332 F.3d 105, 109 (2d Cir. 2003).) As Judge Azrack notes, "the place of the wrong is considered to be the place where the last event necessary to make the actor liable occurred." *Id.* (quoting *Schultz v. Boy Scouts of Am., Inc.*, 65

N.Y.2d 189, 195 (1985). In DES cases, New York courts have consistently pinpointed the place where the plaintiff was born or where her mother ingested DES as the locus of the injury-causing conduct. *Id.* (citations omitted).

Reviving arguments verbatim from her summary judgment brief, Summers urges the Court to depart from decades of New York precedent by substituting New York forum law for the law of the forum where plaintiff's mother last ingested DES and where plaintiff was born. In pressing the break with precedent, as Judge Azrack points out powerfully, plaintiff has made no effort to distinguish her situation from that of the previous DES plaintiffs. (R&R at 12-13.) Instead, she pins her argument to a normative statement of another judge of this Court, the Honorable Jack B. Weinstein, written in a law review article over a decade ago. (Objections at 3-4.) While Judge Weinstein indeed voiced the worthy goal of applying a single jurisdiction's law to all plaintiffs in sprawling multi-state tort litigation where common tortious conduct is alleged, his article clearly caveated that he was advocating a "creative" approach to a hypothetical situation, that is, he was not expounding on the existing state of the law. Jack B. Weinstein, *Mass Tort Jurisdiction and Choice of Law in a Multinational World Communicating by Extraterrestrial Satellites*, 37 Willamette L. Rev. 145, 153-54 (2001). As Judge Weinstein's own jurisprudence bears out, the law of New York, as it exists, controls actual choice of law considerations. In this case, existing law results in the application of the law of the jurisdiction where plaintiff and her mother were exposed to the drug that allegedly caused harm to Summers. *See, e.g., In re Zyprexa Prod. Liab. Litig*, 277 F.R.D. 243 (E.D.N.Y. 2011); *In re Zyprexa Prod. Liab. Litig.*, 727 F. Supp.2d 101 (E.D.N.Y. 2010). Although it would not be the first time that Judge Weinstein's words augered a change of law, patently, New York's choice of law rules mandate application in this case of the substantially differing law of Quebec, not New York, to

determine the sufficiency of plaintiff's cause. To avoid summary dismissal, consequently, under that controlling law Summers must identify the manufacturer, allege its fault, and state sufficient facts supporting it to create a genuine issue of material fact about it. Within that framework, as Judge Azrack explained in detail in the R&R, Summers must identify the manufacturer of the DES medication taken by her mother in order to state a claim.

3. Failure to Raise a Genuine Issue of Material Fact

Although Summers claims in her Objections that "the affidavits and deposition testimony present a clear-cut question of fact as to identification" of the DES taken by her mother, (Objections at 4), plaintiff's filings make plain that the inquiry hinges on the sufficiency of a single piece of evidence—the affidavit of June Kardos ("Kardos affidavit"), an "extremely close friend[]" of plaintiff's mother, (Kardos affidavit ¶ 3). The Court finds this evidence woefully lacking. It creates no dispute of material fact.

As Judge Azrack notes in the R&R, "Rule 56 of the Federal Rules of Civil Procedure requires that '[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matter stated.'" (R&R at 16 (quoting Fed. R. Civ. P. 65(c)(4).) Limited by the personal knowledge requirement, the Kardos affidavit establishes nothing more than the fact that Kardos took a little white pill that she understood to be manufactured by Lilly. Beyond a single inadmissible hearsay statement she attributes to plaintiff's mother, it provides no basis for the Court to determine whether Kardos and plaintiff's mother took the same medication at all, let alone whether it was manufactured by the same company. Should Kardos possess a legitimate basis for asserting such knowledge about

7

plaintiff's mother's medication consumption, she certainly does not swear to it in her affidavit.[4]

Despite the complete absence of admissible particulars in the Kardos affidavit, plaintiff advances two arguments as to why the evidence raises a genuine issue of material fact: (1) Kardos asserts that, in Canada in the 1950s, only Lilly "produced" the drug taken by plaintiff's mother, (Opposition at 7-8); and (2) the affidavit provides circumstantial evidence regarding the size and color of the pills plaintiff's mother ingested, (Objections at 4-5). Neither convinces the Court that plaintiff comes anywhere close to establishing a disputed material fact about, much less proving the identity of, the maker of the harm-causing DES ingested by plaintiff's mother, as required for liability under the law of Quebec.

Warranting little weight on its face, the first argument unravels completely once the strategically-selected excerpt included in plaintiff's opposition brief is placed in context. Read in its entirety, the relevant paragraph reflects that, "[f]rom [Kardos's] experience as a Registered Nurse I know that Eli Lilly & Co. was the only pharmaceutical company that produced Stilbestrol in Canada in the 1950s. The pediatric office that I worked in received many prescriptions for Stilbestrol, all from Eli Lilly & Co." (Kardos affidavit ¶ 6.) Putting aside for the moment the distinction between the manufacture and marketing of DES, it defies logic how Kardos's position as a pediatric nurse could put her in a position to know about the DES market in Canada. Presumably, the only prescriptions in the pediatric office where she worked were those issued, not "received," (Kardos affidavit ¶ 6), by her employer, a pediatrician, who, assumably treated children, not pregnant women. (And if pediatric practices in Canada during

---

[4] Even applying the more liberal market share theory of liability, New York's experience reflects the improbability of Kardos possessing the relevant knowledge. On multiple occasions, the Appellate Division has ruled that only a DES plaintiff's mother or her mother's physician or pharmacy "can possibly have any available extant information bearing on [this] issue." *Rowe v. Eli Lilly & Co.*, 656 N.Y.S.2d 858, 858 (N.Y. App. Div. 1st Dep't 1997); *see also Brenkman v. Eli Lilly & Co.*, 654 N.Y.S.2d 139 (N.Y. App. Div. 1st Dep't 2001).

8

the 1950s were different than the American experience of which the Court takes notice, the affidavit surely does not say so.) Furthermore, even if the affidavit correctly captures the state of the Canadian market, it provides no basis to assume that Kardos is a pharmaceuticals expert possessing such knowledge and is a competent witness to relay it. Such an expert doubtlessly is available but was not produced to opine on the issue. More importantly, such an expert, unlike Kardos, also could have opined, if it were true, that, as Kardos recalled, Lilly was the sole marketer of DES in Canada during the 1950s, raising a genuine question of material fact as to which manufacturer's product would have been available to plaintiff's mother. Plaintiff did not bring forward such competent evidence, and the Court, of course, cannot now speculate what such an expert might have said or that any competent evidence exists to confirm Kardos's incompetent recollection.[5]

Plaintiff's second argument fares no better. Citing a series of decisions in which the Second Circuit found "proof of causation sufficient in the absence of identification of the precise product that injured a given plaintiff," *In re Brooklyn Navy Yards Asbestos Litig.*, 971 F.2d 831, 837 (2d Cir. 1992), plaintiff asserts that she meets her burden circumstantially through Kardos's testimony about the size and color of the DES ingested by Summers's mother. (Objections at 4-5.) Three fatal defects undermine plaintiff's contention. First, nowhere does Kardos even imply how she could have obtained personal knowledge of the size and color of plaintiff's mother's medication. She does not say, for example, that she actually witnessed plaintiff's mother ingesting such medication. The Court, therefore, must conclude that "the information she offers could only be based on hearsay or speculation," which courts in this Circuit have found an insufficient basis for raising material issues of fact on summary judgment. (R&R at 18.)

---

[5] Presumably, if competent, Kardos's recollection would exculpate all other defendants under the substantive law of Quebec.

Second, nowhere does Kardos testify that only Lilly manufactured DES that took the form of a "little white pill," not that she was competent to offer such expert testimony. (*See* Kardos affidavit ¶ 4.) Without competent evidence connecting the description to a product made only by Lilly, the assertion has little probative value. Finally, plaintiff ignores major substantive and qualitative differences between the Kardos affidavit and the circumstantial evidence put forward in the asbestos cases to which she cites. In those cases, multiple witnesses with first-hand knowledge presented "uncontroverted evidence" tying each victim to a place where specific defendants' products were known to have been used. *Kreppein v. Celotex*, 969 F.2d 1424, 1426 (2d Cir. 1992), *see also In re Brooklyn Navy Yards Asbestos Litig.*, 971 F.2d at 836-37; *O'Brien v. Nat'l Gypsum Co.*, 944 F.2d 69, 72-73 (2d Cir. 1991); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285-87 (2d Cir. 1990). In other words, courts have accepted as sufficient corroborated evidence circumstantially proving actual exposure to a defendant's products. *Id.* In contrast, plaintiff offers only the testimony of a single witness, with questionable insight into the pharmacological experience of plaintiff's mother, who, even if she had a non-hearsay basis to describe the medication taken by her friend, was without competence to testify that Lilly was the sole maker of the "little white pill," nor does plaintiff offer the declaration from anyone with the competence to do so.

With no admissible proof as to the identity of the manufacturer who marketed any of the DES allegedly ingested by her mother while plaintiff was *in utero*, Summers fails to raise a material question of fact about an element essential to her claim. Under Rule 56, summary judgment for defendants is mandated on that ground. In finding "the Kardos affidavit is insufficient to create a factual issue in this case," (R&R at 19), Judge Azrack correctly determined the issue and properly recommended judgment against Summers.

## Conclusion

For the foregoing reasons, upon *de novo* review, the Court finds Magistrate Judge Azrack's R&R to be correct, well-reasoned, and free of reversible error. The Court, therefore, adopts the R&R in its entirety, with the supplement of this Memorandum and Order, as the opinion of the Court. The case is dismissed.

The Clerk of Court is directed to enter judgment against Summers pursuant to Federal Rule of Civil Procedure 54(b).

SO ORDERED.

Dated: Brooklyn, New York
January 4, 2013

s/ ENV
_____
ERIC N. VITALIANO
United States District Judge